UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

AHMED HASSAN,
                           Plaintiff,

               -against-

TRIBOROUGH BRIDGE AND TUNNEL
AUTHORITY and CONDUENT INC.,

                        Defendants.

------------------------------------------------------------- x

        **MEMORANDUM & ORDER**

        1:23-CV-00873 (ENV) (CLP)

VITALIANO, D.J.

Stemming from New York's transition to cashless tolling, plaintiff Ahmed Hassan brings this putative class action lawsuit against the Triborough Bridge and Tunnel Authority ("TBTA") and Conduent Incorporated, making claims arising under, *inter alia*, the New York General Business Law ("GBL") and 42 U.S.C. § 1983 for violations of the Eighth Amendment and Procedural Due Process of the United States Constitution and for violations of the New York Constitution. *See* Am. Compl., Dkt. No. 14, ¶¶ 48–55. Presently before the Court is defendant TBTA's motion to dismiss. *See* Def. Mot., Dkt. Nos. 24–25. For the reasons that follow, this motion is GRANTED in its entirety.

<u>Background</u>[1]

New York, like many other states, uses the "E-ZPass" system for bridge, tunnel, and highway toll collection, allowing drivers to pay tolls without stopping. *See* Am. Compl. ¶ 2. The E-ZPass toll collection system is reliant upon the accessing of a transponder located in the vehicle

---

[1] The facts are drawn from the amended complaint, *see* Am. Compl., Dkt. No. 14, and are construed as true, with all reasonable inferences drawn in plaintiff's favor. *See Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

1

traveling on the toll facility. *See id.* Beginning in 2017, all TBTA bridges and tunnels were converted to cashless tolling, meaning that all drivers, even those who had not signed up for E-ZPass, no longer had to stop to pay tolls. *Id.* ¶ 3. Following this transition, registered owners of vehicles could pay tolls through facilities on TBTA bridges and tunnels either by using a valid E-ZPass or by paying via the Tolls by Mail or Pay Toll Now programs. *See Id.* ¶ 3 n.1.

When a driver goes through a toll without paying due to either a malfunctioning or nonexistent E-ZPass, TBTA sends a notice of violation to the driver's address on file with the State Department of Motor Vehicles ("DMV"). *See Id.* ¶ 4. Pursuant to the relevant regulation, notices of violation contain: (1) "the name and address of the individual … alleged to be liable for the toll violation"; (2) "the registration number and state of the vehicle alleged to have been involved in the violation" (the registered owner of the offending vehicle); (3) "the location, date and time of each use of the facility that forms the basis of such violation"; (4) "the amount of the assessed toll and violation fee"; and (5) "an image of the license plate of the vehicle being used." *See* 21 NYCRR § 1021.3(c). Drivers who fail to pay the toll timely following receipt of the notice of violation face up to a $100 fine, regardless of the amount of the underlying violation. As alleged by plaintiff, due to violation notices arriving late or sent to outdated addresses, a significant number of drivers unwittingly face large fines for non-payment of toll violations. *See* Am. Compl. ¶¶ 5–6.

The E-ZPass website (the "Website"),[2] designed and managed by Conduent, provides information to drivers related to tolling violations. *See* Am. Compl. ¶¶ 9–11. The Website is intended to make the monitoring and payment of tolling violations more efficient. At the core of Hassan's claimed grievance is his allegation that due to the Website-dominated process,

---

[2] E-ZPass New York, www.e-zpassny.com (last visited October 27, 2025).

responsible drivers who do not receive notices of violation in the mail are "stymied" from timely paying their tolling violations on the Website for two principal reasons. *Id.* ¶¶ 13–14. *First*, Hassan claims that violations are not displayed on a driver's account dashboard. *See id.* ¶ 15. *Second*, he alleges that the Website's architecture prevents drivers from discovering violations where they lack the violation number. *See id.* ¶ 16. Without the violation number, the driver is left to search by license plate number, but such searches require the driver to input the corresponding "date of travel" to complete the search, and drivers are "likely unaware" of the exact date the violation occurred. *Id.* ¶¶ 16–17. In that regard, Hassan concedes that the driver conducting such a search can repeat searches for separate days when the driver is unsure of the exact date of the violation. *See id.* ¶ 18.

As for his claims, Hassan alleges that at some point between 2021 and 2023, he lent his car to a family member who incurred several tolling violations. *See* Am. Compl. ¶¶ 35, 37, 39. While Hassan was regularly checking violations on the Website at this time, he complains that he was prevented from identifying and ultimately paying the violations incurred by his family member because he did not know the exact dates that his car was used. *See id.* ¶¶ 36, 38. As a result, TBTA fined Hassan roughly $350 for violations which were "significantly smaller than this amount." *Id.* ¶ 39. Ultimately, plaintiff paid approximately $50 toward this charged amount, and TBTA sent the remainder to collections. *Id.* ¶ 40.

Hassan has now brought suit against TBTA and Conduent, alleging violations of GBL §§ 349 and 350; 42 U.S.C. § 1983; and bringing a claim for Unjust Enrichment and Breach of Contract and Quasi-Contract.[3]

---

[3] Hassan has since withdrawn his claims for Breach of Contract and Quasi-Contract and his demand for punitive damages. *See* Pl. Opp., Dkt. No. 27, at 7 n.1.

Legal Standards

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. When reviewing such motions, a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the [p]laintiff." *Anzelone v. ARS Nat'l Servs., Inc.*, No. 2:17-cv-04815, 2018 WL 3429906, at *2 (E.D.N.Y. July 16, 2018). To survive such a motion, a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Simply put, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Although a plaintiff need not provide "detailed factual allegations," *Twombly*, 550 U.S. at 545, the pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

Discussion

I.    New York General Business Law Claims

"The elements of a cause of action under [GBL §§ 349–50] are that: (1) the challenged conduct was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 213 (S.D.N.Y. 2019). TBTA first interposes a procedural argument to Hassan's GBL claim, arguing that dismissal is warranted due to Hassan's failure to "allege[] that he submitted a Notice of Claim in accordance with the Public

Authorities Law." Def. Mot., Dkt. No. 25, at 15.[4] Whether or not meritorious, given the compelling nature of the substantive grounds for dismissal, there is no need to reach the arcane procedural objection that TBTA chose to raise only in a footnote. *See id*., at 15 n.6. Far more persuasive is its substantive argument that the authority's toll-collection practices are not "consumer oriented," and that they, therefore, are not subject to GBL purview. *See id*. at 16–18.

Manifestly, the overwhelming weight of state and federal case law supports TBTA's position that toll collection is not consumer-oriented and therefore does not fall within the purview of the consumer protection law provisions of New York's General Business Law upon which Hassan founds his statutory claims. For example, in *Kinkopf v. Triborough Bridge & Tunnel Auth.*, the plaintiff successfully challenged in the lower court overcharges to his E-ZPass account under the GBL. 792 N.Y.S. 2d 291 (N.Y. App. Term 2004). The appellate term reversed, holding that "[i]nasmuch as the tolls are in essence a use tax … the collection of same is not a consumer oriented transaction and therefore not subject to section 349 of the General Business Law." *Id.* at 74. Significantly, in two federal district court cases also dealing with challenges to New York's transition to cashless tolling—*O'Diah v. TBTA-Triborough Bridge & Tunnel Auth.*, No. 19-cv-7586, 2021 WL 2581446, at *9 (S.D.N.Y. June 23, 2021),[5] and *Farina*, 409 F. Supp. 3d at 213–14—the courts agreed with *Kinkopf* and dismissed the respective plaintiff's GBL claim because a toll violation, and administrative punishment for updating toll-collection regulations, is not a consumer-oriented activity.

---

[4] Citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination.

[5] The *O'Diah* court made clear that "'[t]he holding of an intermediate appellate state court … is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" No. 19-cv-7586, 2021 WL 2581446, at *9 (S.D.N.Y. June 23, 2021) (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000)). There is no reason to believe that the New York Court of Appeals would decide differently.

Swimming against the tide, Hassan seeks to distinguish *Kinkopf* by arguing that he "is not challenging 'the Authority of [TBTA] [] to set and collect tolls for the use of its facilities,' but rather the 'significant fine, roughly one hundred dollars, regardless of the amount of the underlying violation.'"  Pl. Opp., Dkt. No. 27, at 10 (quoting *Kinkopf*, 792 N.Y.S. 2d at 292).  But Hassan cites no legal authority for the proposition that fines for not paying toll violations should be treated differently than the underlying violations, nor would such a theory make any sense.  Moreover, this exact theory was persuasively rejected by the *Farina* court; as here, the factual allegations do not pertain to any consumer-oriented activities.  Accordingly, Hassan's GBL claims must be, and are, dismissed.

II.    § 1983 Claim[6]

    A.    Excessive Fines

Hassan alleges that the fines TBTA issued for his failure to pay his toll violations— "roughly one hundred dollars," having no proportionate relationship to the amount of the subject unpaid tolls—were contrary to the Eighth Amendment's prohibition on excessive fines.  *See* Am. Compl. ¶¶ 7, 51–55.  The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  Punishment in the form of forfeiture "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a[n] offense." *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S. Ct. 2028, 2030. 141 L. Ed. 2d 314 (1998).  The Supreme Court has made clear that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," and that "any judicial

---

[6] Hassan's § 1983 claim based on violations of the New York State Constitution are dismissed because "section 1983 is not a vehicle for asserting a violation of a state constitution," including New York's. *Farina*, 409 F. Supp. 3d at 212.  At any rate, Hassan does not "suggest any reason why the disposition of an excessive fines or due process claim would be decided differently under the New York Constitution than under the United States Constitution." *Id.*

determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.* at 336.  Together, these principles "counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense."  *Id.*  These basic principles are no less applicable to regulatory fines.

In *Bajakajian*, the Supreme Court "established a two-step inquiry for determining whether a financial penalty is excessive under the Eighth Amendment."  *United States v. Viloski*, 814 F.3d 104, 108 (2d Cir. 2016).  In the first step, courts must "determine whether the Excessive Fine Clause applies at all" by considering whether the payment at issue constitutes a "fine," meaning that it is punitive in nature and not "purely remedial."  *Id.* at 109.  If the Excessive Fine Clause applies, courts proceed to the second step, which asks "whether the challenged forfeiture is unconstitutionally excessive."  *Id.*  In this case, the complaint plausibly alleges that the fines imposed for failing to timely pay tolling violations are punitive in nature, and thus within the scope of the excessive fines clause.  "Civil fines that seek to deter rule-breaking or enforce compliance are punitive in character."  *Farina*, 409 F. Supp. 3d at 198.  Here, Hassan alleges that "[t]he result for not paying a violation on time is a significant fine, roughly one hundred dollars, regardless of the amount of the underlying violation," and that he has been "fined roughly $350 for violations which were significantly smaller than this amount."  Am. Compl. ¶¶ 7, 39.  Just like in *Farina*, Hassan's allegations that TBTA administers "fees and penalties that are multiples of the actual toll" "support a deterrent or retributive purpose, as opposed to an exclusively remedial one."  *Farina*, 409 F. Supp. 3d at 198.  Thus, Hassan has plausibly alleged that the disputed fees were punitive in nature and subject to Eighth Amendment scrutiny.

*Bajakajian* lays out four factors for courts to evaluate in determining whether or not a fine is unconstitutionally excessive:  "(1) the essence of the crime of the defendant and its relation to

7

other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by the defendant's conduct." *Viloski*, 814 F.3d at 110.

TBTA argues that the first factor—the essence of the crime—weighs in its favor because "'tolls are essential in raising revenue towards the functioning of roads, bridges, and tunnels.'" Def. Mot. at 17 (quoting Am. Compl. ¶ 1). Hassan, by contrast, characterizes his crime as merely "not recalling the dates on which he used Defendant's toll service," and argues that this factor favors a finding that the fine was excessive because "'the harm that [he] caused" affected TBTA "'in a relatively minor way.'" Pl. Opp., Dkt. No. 27, at 13. Courts typically look to the violator's culpability to assess this factor, with the nature and extent of the underlying violation more significant for high culpability actions.

While Hassan tries to minimize his repeated offenses, courts recognize that "violators may still be culpable" even where, as here, "the underlying violation is minor." *Pimentel v. City of Los Angeles*, 974 F.3d 917, 923 (9th Cir. 2020) (holding that $63 fine for overstaying parking meters was not excessive). Moreover, another court in this district has previously held that repeated offenses, like those by Hassan here, indicate greater culpability on the part of the violator. *See Greenport Gardens, LLC v. Vill. of Greenport*, No. 19-cv-2330, 2021 WL 4480551, at *14 (E.D.N.Y. Sept. 30, 2021).

To the extent that Hassan is arguing that he lacks culpability because his failure to pay the tolls at issue was not willful but resulted from TBTA's flawed transition to cashless tolling, *see* Pl. Opp., Dkt. No. 27, at 13–14, that argument was rejected by the Second Circuit in *Reese v. Triborough Bridge & Tunnel Auth.*, which reasoned by analogy that "[f]ines are a constitutionally permissible form of penalty for even strict liability offenses." 91 F.4th 582, 590–91 (2d Cir. 2024).

8

The Second Circuit in *Reese* affirmed the district court's judgment that $100 fines for failing to pay toll violations did not violate the Eighth Amendment, explaining that courts may "find the penalties authorized by the New York legislature for similar offenses . . . instructive in determining the essence of the offense" and found that "[t]he fines that the New York legislature has authorized for toll violations are roughly equivalent to those authorized for other traffic violations." *Id.* at 591. Guided by *Reese*, the Court finds that the first *Bajakajian* factor weighs heavily in favor of dismissal.

With regard to the second factor, there is no dispute that Hassan, as a vehicle owner whose vehicle was used at TBTA facilities, *see* Def. Mot., Dkt. No. 25, at 13–14, falls "within the class of people that the fines are meant to regulate." *Farina*, 409 F. Supp. 3d at 202. Thus, this factor also weighs in favor of dismissal. *See Greenport Gardens, LLC*, 2021 WL 4480551, at *14.

The third *Bajakajian* factor asks courts to compare the maximum fine that could have been imposed to the fine actually imposed. *See Reese*, 91 F.4th at 592. Hassan's sole allegation in this regard is that he "was fined roughly $350 for violations which were significantly smaller than this amount." Am. Compl. ¶ 39. Plainly, this factual allegation does not provide nearly enough information to determine that this factor weighs in favor of a finding of an excessive fine. As TBTA points out, Hassan omits allegations regarding "the number of crossings at issue, what the toll amount was for each crossing, and the amount of each violation fee assessed for each crossing." Def. Mot., Dkt. No. 25, at 23. Nor does Hassan allege the amount of each individual fine. Absent this information, the Court cannot conduct a proportionality analysis, which is fatal to Hassan's excessive fines claim. *See Greenport Gardens, LLC*, 2021 WL 4480551, at *14 (allegations regarding total amount of fines, absent allegations about how much plaintiff was charged under each ticket, were "plainly insufficient to show gross disproportionality"); *Farina*, 409 F. Supp. 3d

9

at 200 (dismissing excessive fine claim where plaintiff did not "identify what, if any fines she actually paid, and in what amount"). Tellingly, Hassan does not cite a single case, nor is the Court aware of any, suggesting that a vague reference to a fine's being greater than the underlying violation is sufficient to state an Eighth Amendment claim. *See Lepper v. Village of Babylon,* No. 18-cv-7011, 2022 WL 939719, at *24–25 (E.D.N.Y. Mar. 29, 2022). Because Hassan does not allege sufficient facts from which the Court can properly conduct a proportionality analysis, the third factor weighs in TBTA's favor.

The fourth factor examines "the nature of the harm caused" by the conduct. *Viloski*, 814 F.3d at 114. As alleged by Hassan, "[t]olls are essential in raising revenue towards the functioning of roads, bridges and tunnels." Am. Compl. ¶ 1. In its motion to dismiss, TBTA argues that "[b]y ignoring tolls, toll evaders cause TBTA to lose toll revenue that it was entitled to collect" and "add to congestion, encourage others to evade tolls, force TBTA to incur costs associated with violations, [and] undermine the goals of Cashless Tolling." Def. Mot., Dkt. No. 25, at 25. The Second Circuit in *Reese* agreed that the effects of ignoring toll violations weigh against an excessive fine determination, noting that "[i]t goes almost without saying that actually collecting tolls is the core of Cashless Tolling," and "it would be difficult for TBTA to successfully collect tolls if it were unable to deter would-be toll violators through fines." *Reese* 91 F.4th at 593. Hassan's sole argument in opposition is that he "did not ignore the tolls, but rather could not comply with his obligation due to Defendant's inadequate online system." Pl. Opp., Dkt. No. 27, at 16. But this argument goes to the *essence* of the crime (*i.e.*, factor 1), rather than the harm caused by it (*i.e.*, factor 4), and as discussed with regard to the first factor, fines may still be permissible even if the violator did not act willfully. In sum, because each of the *Bajakajian*

weighs in favor of TBTA, the Court concludes that the fines Hassan paid were not grossly disproportional to his conduct and thereby unconstitutionally excessive.

### B.        Procedural Due Process

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." "The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). "Because '[t]he fundamental requisite of due process of law is the opportunity to be heard,' a party must receive 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.'" *Farina*, 409 F. Supp. 3d at 204 (quoting *In re Medaglia*, 52 F.3d 451, 455 (2d Cir. 1995)). Although "due process does not require actual notice, actual notice satisfies due process" if it "apprises [a party] of the pendency of the action and affords [it] an opportunity to respond." *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F. 3d 408, 429 (2d Cir. 2011) (quotations omitted).

In support of his procedural due process claim, Hassan alleges that defendants "impose fees and penalties for violations which [drivers] are unable to discover even with due diligence." Am. Compl. ¶ 54. As further articulated in his opposition to TBTA's motion to dismiss, Hassan argues that he was deprived of a protectable property interest in the $50 in fines paid toward TBTA without due process of law because the "'website's architecture prevent[ed]'" him from "'discovering violations where [he] lack[ed] the violation number.'" Pl. Opp., Dkt. No. 27, at 17. Even assuming Hassan alleges a protectable interest in the fines paid to TBTA, his procedural due process claim fails because he concedes that he received notice of his violations by mail at his

11

address on file with DMV.  *See* Pl. Opp., Dkt. No. 27, at 11 ("Plaintiff *does not 'allege that notices were not sent* to his address on file with the DMV' or 'claim to have updated an address with the DMV and not having received notices at that address'") (emphasis added).  Actual notice of the sort that Hassan admits to receiving is plainly sufficient to satisfy due process requirements.  *See Farina*, 409 F. Supp. 3d at 207 (notices of tolling violations mailed by TBTA satisfy due process requirements); *O'Diah*, 2021 WL 2581446, at \*8.  Consequently, Hassan's due process claim is dismissed.

III.    Unjust Enrichment

"The elements of a cause of action to recover for unjust enrichment are (1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  *Rojas v. Triborough Bridge & Tunnel Auth.*, No. 18-cv-1433, 2022 WL 748457, at \*16 (S.D.N.Y. Mar. 10, 2022), *aff'd sub. nom.*, *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F. 4th 582 (2d Cir. 2024).  "The essential inquiry in any action for unjust enrichment or restitution is" the third prong, "whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."  *Paramount Film Distrib. Corp. v. State of N.Y.*, 30 N.Y.2d 415, 421, 285 N.E.2d 695, 334 N.Y.S. 2d 388 (N.Y. 1972).

In this case, where the Court concludes that the "fines paid by [Hassan] to TBTA were not grossly disproportional, and therefore did not violate the Excessive Fines clause of the Eighth Amendment," *see* Section II.A., *supra*, Hassan does "not articulate[] how as a matter of law defendant[']s retention of the fines would be against equity and good conscience."  *Rojas*, 2022 WL 748457, at \*16; *see also Reese*, 91 F.4th at 594 (affirming dismissal of unjust enrichment claim, as "[t]he reasons that the Plaintiffs cite for the purported inequity are all routine parts of a

12

government system for enforcing traffic laws," and "[i]t is not inequitable for a violation of government regulations to result in a fine, and for nonpayment of that fine to lead to harsher consequences."). Hassan's unjust enrichment claim is therefore dismissed. [7]

## Conclusion

For the foregoing reasons, TBTA's motion to dismiss is granted, and Hassan's claims are dismissed with prejudice.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
    October 28, 2025

/s/ Eric N. Vitaliano
ERIC N. VITALIANO
United States District Judge

---

[7] Hassan requests in a single line that the Court grant him leave to file a Second Amended Complaint. *See* Pl. Opp., Dkt. No. 27, at 19. Because plaintiff has already amended his complaint once, and the Court finds that further amendment would be futile, the request is denied.